# Martin Tighe *v.* Charles A. Smith and Mary A. Kearney, Appellants.

*Ejectment—Evidence—Mistake—Deed.*

In an action of ejectment it appeared that about fourteen years prior to
the issuing of the writ, plaintiff conveyed the land in dispute to his mother,
the consideration named in the deed being $2,000. Three years afterwards
plaintiff's mother conveyed the land to M. who, seven years thereafter,
conveyed a life estate to plaintiff's mother with remainder to defendant.
Plaintiff claimed that by a mistake the land had been conveyed to his
mother absolutely, whereas he had intended to convey only a life estate.
The evidence showed that at the time the deed was executed the mistake
was noticed, but that the grantee said that it would make no difference as
the land would all go back to her son when she died. Declarations were
also admitted in evidence made by M., the brother-in-law of plaintiff, and
by Charles A. Smith, the real defendant, another brother-in-law, who
claimed the land under his deceased wife. The declarations tended to
support the plaintiff's claim. The evidence as to whether any of the con-
sideration had actually been paid was conflicting. There was also evi-
dence that plaintiff at the time he executed the deed was insolvent, and
that the property was incumbered. *Held*, (1) that the declarations of the
grantee and of Charles A. Smith were properly admitted in evidence;
(2) that a verdict and judgment for plaintiff should be sustained.

Argued April 19, 1898. Appeal, No. 404, Jan. T., 1898, by
defendants, from judgment of C. P. Blair Co., June T., 1896,
No. 230, on verdict for plaintiff. Before Sterrett, C. J., Mc-
Collum, Mitchell, Dean and Fell, JJ. Affirmed.

Ejectment for a lot of land in the city of Altoona. Before
Bell, P. J.

At the trial plaintiff's counsel offered to prove by Joseph A.

Ferry, the witness on the stand, in addition to what he has already testified to, that as soon as the deed was signed, Mrs. Bridget Tighe, the mother of Martin Tighe, who was present, said : "Sure, what is the difference ; it will all return to Martin any how when I am through with it," or words to that effect.

Objected to; (1) that it is inadmissible to affect the deed for the reason that it was a statement which, if made at all, was made after the execution and delivery of the deed ; (2) that it does not purport to show any fraud as an inducement to the execution of the deed.

By the Court: In view of the rebuttal opening of the plaintiff's counsel, wherein he stated that he would show that the deed was without consideration, and that Mrs. Tighe repeatedly stated that the remainder, or principal, after her death, should revert to Martin, we will admit the testimony.  We can determine in the future just how much importance is to be attributed to the testimony of this particular witness ; but we think it is a step in the line of proof, perhaps, to be offered as stated by the plaintiff's counsel in said opening in rebuttal.  I think it is one step ; of course, if he does not get any further it does not amount to anything.  A bill is sealed for the defendants.

Witness testified: " Bridget Tighe, she said, about the time we were leaving the office, she says : 'Sure, what's the difference ?  It will all return to Martin any how when I am through with it; what's the difference?  It will all return to Martin any how when I am through with it ; ' something similar to that ; I can't say the exact words ; something like that." [1]

When Mrs. James Coriss, a witness called for the plaintiff, was on the stand, she was asked: " Q. Did you have a conversation with Charles Smith about this property any time, and if so, state when and what took place ? "

The testimony of the witness is objected to the same as previous witnesses.

By the Court: The objection is overruled and a bill sealed for the defendants.

" A. Yes, sir.   Q. When?   A. I had this last summer ; since this case was pending, Mr. Smith and I were talking in the shop and I asked him why he and Martin didn't get together and settle this case without the trouble of going to law over it ; he

said as far as he was concerned that was easily done, but that he had promised the old lady, Mrs. Tighe—promised that he would look after the interests of Miss Kearney after she was gone; I said to him, 'Surely Martin is willing to recompense Mary for the care of his mother during her illness; is he not?' He says: 'Yes, to a certain extent, but not to the amount we think she is entitled to.' Q. What did he say about himself? A. He said further he didn't want the property, he didn't own it; all he wanted was to get out of it the sum of money he had in it and protect the interests of Mary Kearney." [3]

The facts appear by the charge of the court, which was as follows :

On January 19, 1882, Martin Tighe executed and delivered a deed to his mother, Mrs. Bridget Tighe. The said deed purports to convey to said Mrs. Bridget Tighe, for a consideration of $2,000, a lot on Seventeenth avenue, in the city of Altoona. Mrs. Tighe died in March, 1896. Her said son, Martin Tighe, under the claim or allegation that all the estate which was intended to pass by said deed to his mother, Mrs. Bridget Tighe, was a life estate, brought the present action of ejectment, which you have sworn to try, against Charles A. Smith and Miss Mary Ann Kearney as defendants. Charles A. Smith claims title to said lot by virtue of a deed of conveyance from Gib McCullough. Mrs. Bridget Tighe, in 1885, conveyed said lot in fee simple to Gib McCullough; McCullough in 1892 made a deed conveying a life estate to Mrs. Bridget Tighe and conveying the remainder or, what is commonly known or incorrectly termed the fee simple, to Charles A. Smith and Mrs. Winnifred Smith, to them and their heirs. Charles A. Smith and his wife, by the terms in the habendum in said deed from McCullough, take what is called a residuary estate. Mrs. Smith died in 1894 and her husband, Charles A. Smith, by right of survivorship, succeeded to the rights of his wife and took all the estate conveyed by said habendum. Miss Mary Ann Kearney, it seems, was named as a defendant because she was in actual possession of the premises when this ejectment suit was brought.

The presumption of law is that the language employed in a deed or conveyance of land correctly represents the intention of the parties thereto; that the grantor intended to convey and

did, in fact, convey just such an estate as is imported to be conveyed by the words of the deed; but in certain exceptional cases, in accordance with certain equitable doctrines, the deed is allowed to be reformed on the ground of fraud, accident or mistake. By "reformed" I mean that the true intent of the deed may be shown, although such intent may not be in accordance with the language used; and this may be done when such discrepancy between the language used and the true intent was caused by the fraudulent act of one of the parties to the deed or was occasioned by some mistake. But as has before been stated, the presumption of law is against fraud or mistake in deeds or written instruments. The burden is on him who alleges it to prove such fraud, accident or mistake by clear, precise and indubitable proof. All this does not mean that there must be absolute certainty. The jury must not hesitate or doubt; they must have clear convictions; they must believe the witnesses; they must believe the facts in issue definitely and distinctly established. When, therefore, Martin Tighe, the plaintiff, alleges that there was fraud or mistake in the language of said deed of January 19, 1882, and that it was intended thereby to convey not a fee simple, as is imported by the language of the deed in question, the burden is on him to prove such fraud or mistake clearly, precisely and indubitably. As I have said, deeds may be reformed—that is, made to conform with the true intent of the parties on the ground of fraud, accident or mistake. It is sometimes difficult to distinguish the demarcation line between fraud and mistake. It is sometimes hard to tell just where mistake ends and fraud begins. The boundary lines between the two are sometimes blended.

In the present case counsel for the plaintiff make some claim to recover on the ground of alleged fraud, alleging that Martin Tighe, when he executed the deed in question, was overpersuaded by his mother, or his two sisters, Mrs. Winnifred Smith and Mrs. Kate McCullough; but I fail to see sufficient evidence of fraud in the inception of the deed to submit the question of such fraud to you for your consideration. At most, there is but the evidence of Mr. Ferry that Martin Tighe had been drinking and some alleged declarations that his sisters had it fixed. If Mrs. Bridget Tighe made a wrongful use of the deed, tried to make use of what was intended to be an estate

for life as an estate in fee simple, it would· be a wrongful act on her part; but still it would not be a fraud in the inception of the title, and would not be such a fraud as would warrant the submission of the bare question of fraud for your consideration. [But I submit to you for your decision, under the rules as to the burden and nature of the proof heretofore stated, the question as to whether there was a mistake in the language of the deed. Was it in fact intended by Martin Tighe and Bridget Tighe that said deed should convey to Bridget Tighe a life estate merely, and not an estate in fee simple? The only proof of anything occurring at the time of the signing of the deed tending to show such mistake is the remark of Bridget Tighe, as testified to by Mr. Ferry, "Sure, it will make no difference; it will all come back to Martin when I die," or words to that effect. This, in itself, would not amount to sufficient to warrant the finding of mistake in the deed; but the plaintiff alleges that the fact of such mistake is shown by other facts and circumstances, among which are the following: Nonpayment of any purchase money by Mrs. Bridget Tighe, as is shown by her alleged declaration; inadequacy of price for a fee simple estate, the lot conveyed being worth, it is alleged, $2,500, and the amount paid by Mrs. Bridget Tighe being, at most, a judgment for some $47.00 and costs, to Henry Fleck, and dues for some five years on some five or at most six shares of stock in the Enterprise Building and Loan Association.] [16] .This, so the plaintiff claims, would only amount to a fair rental of the property. The plaintiff further relies on the alleged declarations of Mrs. Bridget Tighe that the title was not in fee simple, but that it was a life estate, so it is claimed on behalf of the plaintiff. As for instance, the declaration testified to by B. W. Flanagan, that she said she did not buy it; "the girls had it fixed so as she could have a home while she lived." Furthermore, the alleged declarations of Mrs. Bridget Tighe, by Gib McCullough, while he held the title, and his testimony on this trial, and by Mrs. Winnifred Smith, while she was joint owner of the remainder, and by Charles A. Smith, the present defendant, that Martin Tighe owned the property. As further alleged proof that Mrs. Bridget Tighe did not, in fact, believe she had an estate in fee simple, the plaintiff points to the fact that when Martin Tighe, in 1885, claimed the property, his mother transferred it

without consideration, and, it is alleged, in fee simple to Gib McCullough, her son-in-law. The plaintiff's counsel ask why should she convey it if she was the real owner; but if she was not the real owner in fee simple, but only held, in reality, a life estate, such conveyance is readily explainable on the theory that she thought she could cover up the property so that Martin could not get it. That is what is claimed by the plaintiff. Furthermore, it is alleged that Mrs. Bridget Tighe's conduct at the time of the conveyance made by Gib McCullough in 1892, is not consistent with the idea that she deemed herself the owner of the fee simple, but is consistent with that of a life estate only in her. If she was the owner in fee simple, why should the remainder, after her life estate, be placed in Charles A. Smith and his wife? That is what is claimed on the part of the plaintiff. The plaintiff further contends that the testimony of Gib McCullough shows that the reason why such remainder was so vested in Winnifred Smith and Charles A. Smith was that Martin's whereabouts at the time were unknown, and that the Smiths were trustees for him in case he returned. It is further claimed by the plaintiff that the alleged declarations of Charles A. Smith are evidence that he did not, for a time at least, claim the remainder in fee simple; that after the death of Mrs. Bridget Tighe he simply planned to be reimbursed for certain advances, and it was not until after taking legal advice that he asserted absolute ownership; and that such claim of absolute ownership was founded, not on the belief of the righteousness of his claim, but on the technical ground that his paper title was good.

From these alleged facts and circumstances just enumerated, and from other alleged facts and circumstances, the plaintiff claims that there was a mistake in the deed of January 19, 1882, and that said deed was intended to convey to Mrs. Bridget Tighe a life estate only, and not a fee simple title. The plaintiff therefore asks that such deed be reformed so as to conform to the said true intent of the parties; and Mrs. Bridget Tighe, the alleged life tenant, being dead, the plaintiff claims a verdict as against the present defendants, Charles A. Smith and Miss Mary Ann Kearney.

The defendants take issue with the plaintiff as to his claim. In the first place, it is contended on behalf of the defend-

ants that the proof on the part of the plaintiff fails to come up to the legal requirement; that the evidence fails to show clearly, precisely and indubitably that a mistake was made in the deed. How is this, gentlemen? That is a question for you to determine, under the evidence and under the instructions as to the law which you receive from this court. The defendants further claim that the deed in question was made under circumstances which tend to rebut the idea that a life estate only was intended to be conveyed. Martin Tighe, it is alleged, was heavily in debt, if not insolvent, at the time; his property was advertised for sale by the sheriff; and what would be more natural, it is claimed by the defendants, than that a son, under such circumstances, especially if he had no legal heirs, would convey the property absolutely to his mother, with whom he lived? Assuming that said mother did not pay the $2,000 purchase money mentioned in the deed in cash, still it is claimed on behalf of the defendants that, regard being had to the fact that she would have to pay off the Fleck judgment, the Enterprise Building and Loan judgment, and the taxes, insurance, etc., she paid a fair price. Furthermore, it is argued on behalf of the defendants that little reliance should be placed on evidence consisting of the recital of witnesses' declarations to third parties; that such evidence is uncertain at best; that the memory of witnesses intending to be truthful may be unreliable, and that an untruthful witness can easily falsify as to an alleged declaration. This is what is urged on behalf of the defendants. They further contend that the transfer by deed in fee simple by Mrs. Bridget Tighe to Gib McCullough, in 1885, was an assertion of title in fee simple, and was occasioned, not by a desire to cover up the property from Martin Tighe, but at most with intent to get rid of his threats and importunities, such threats or importunities being based, so the defendants contend, not on a just claim, but on an afterthought; that the idea of claiming that the deed was only intended to convey a life estate, and not a fee simple, did not come to him till after his marriage in 1883. Furthermore, it is suggested that Gib McCullough was a son-in-law of Mrs. Bridget Tighe, Winnifred Smith was a daughter and Charles A. Smith a son-in-law; and the title was successively placed in them so that they might look after the old lady, Mrs. Bridget Tighe, and her property. And it is

claimed that a consideration moved from Charles A. Smith, namely, the obligation to pay the Enterprise Building and Loan Association, pay the taxes, keep up the repairs, and, if necessary, support his mother-in-law during her life. It is further claimed on behalf of the defendants that the alleged declarations of Smith as to not claiming title, and as to only wishing to get out of the property the amount he had expended, were based, not on the idea of no title in him, but were caused by a desire on his part to compromise and settle without a lawsuit. These are some of the alleged facts and circumstances relied on by the defendants.

The plaintiff replies that there was no occasion to require Martin Tighe to sell the property; that he was not in arrears to the Enterprise Building and Loan Association; that the debt on which the property was being sold was about the sum of $50.00 or thereabouts, and that he could have easily raised the money on the property to pay it off, but that he desired, at the request of his mother and sisters, to insure his mother a home during her life, and that a life estate is all that either the mother or the sisters asked should be conveyed, and all that was intended to be conveyed. [As to the claim of Charles A. Smith that he expended money on the faith of his title; that is, that he has paid taxes, repairs and building and loan association dues, the plaintiff alleged that the amount so paid is inconsiderable and is covered by rents that Smith received. As to the right of Charles A. Smith to be reimbursed, I will instruct you more fully in my answer to the thirteenth point submitted by the plaintiff; but I instruct you that if Charles A. Smith had knowledge, when the conveyance was executed to him and his wife, Winnifred Smith, by Gib McCullough, that the true interest of Mrs. Bridget Tighe in the land was only an estate for life and that Martin Tighe was the owner of the remainder, or, to use a common, but incorrect, expression, the fee simple, or if Charles A. Smith was a mere volunteer, then Charles A. Smith would simply stand in the shoes of Bridget Tighe, and the plaintiff would have a right to recover against the defendants, if, in point of fact, there was a mistake in the deed from Martin Tighe to Bridget Tighe, which alleged mistake, as heretofore stated, must be proved by clear, precise and indubitable evidence.] [17]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* among others were (1, 3) in admitting in evidence declarations of Bridget Tighe and defendant, Charles A. Smith; (16, 17) portions of charge as above, quoting them.

*M. M. McNeil*, and *H. C. Madden*, of *Heinsling & Madden*, for appellant.—Fraud or mistake in the execution of the deed could not be predicated on the transaction, where a proper motive existed: Bear's Est., 60 Pa. 432; Duff v. Wilson, 72 Pa. 447; Dickey's App., 73 Pa. 244; Shoemaker v. Kunkle, 5 W. 107; Com. v. R. R., 74 Pa. 94; Lutton v. Hesson, 18 Pa. 109.

The evidence to establish fraud or mistake must be confined to what took place at the execution of the deed: Martin v. Berens, 67 Pa. 463; Rearick v. Rearick, 15 Pa. 66; Irvin v. Irvin, 142 Pa. 287; Frey v. Heydt, 116 Pa. 601; Musser v. Stauffer, 178 Pa. 99; Murray v. New York, etc., R. R. Co., 103 Pa. 37; Thomas v. Loose, Seaman & Co., 114 Pa. 45; Boyertown Nat. Bank v. Hartman, 147 Pa. 562; Cummins v. Hurlbutt, 92 Pa. 165; R. R. v. Shay, 82 Pa. 203; Collam v. Hocker, 1 R. 108; Rankin v. Simpson, 19 Pa. 471; Dean v. Fuller, 40 Pa. 479; Martin v. Baird, 175 Pa. 540.

*Thomas H. Greevy*, with him *H. F. Walters*, for appellee, cited on the question of mistake: Bartle v. Vosbury, 3 Grant, 277; Fisher v. Worrall, 5 W. & S. 483; Jones's App., 8 W. & S. 151; Tyson v. Passmore, 2 Pa. 122; Pennock v. Tilford, 17 Pa. 456; Flagler v. Pleiss, 3 Rawle, 345; Breneiser v. Davis, 134 Pa. 11; Chew v. Gillespie, 56 Pa. 308; Gump's App., 65 Pa. 476; Snyder v. May, 19 Pa. 235.

PER CURIAM, May 9, 1898:

This case depended on questions of fact which, under the evidence, were clearly for the consideration of the jury. It was fairly submitted to them by the learned trial judge with instructions which appear to be fully adequate and free from substantial error. We find nothing in the record that would justify a reversal of the judgment.

Judgment affirmed.